# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIK A. AHLGREN, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company,<br><br>        Plaintiff,<br><br>v.<br><br>CHRIS BILKEY, PEG BILKEY, and TRACK AND TRAIL SAFARIS,<br><br>        Defendants. | Civil No. 19-306 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC**, 220 West Washington Avenue, Suite 105, Fergus Falls, MN 56537, for plaintiff.

Mark G. Schroeder, Adam G. Chandler, and Jason R. Asmus, **TAFT STETTINIUS & HOLLISTER LLP**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for defendants.

This case arises out of Jerry Hennessey's unauthorized use of funds from his prior employer, the Ashby Farmers Co-Operative Elevator Company (the "Co-Op"). From 2003 to 2018, Hennessey paid over $5 million of the Co-Op's funds to himself or directly to third parties for his personal benefit. Among others, Hennessey paid Defendant Track and Trial Safaris ("T&T"), owned by Defendants Chris and Peg Bilkey (the "Bilkeys"), with checks from the Co-Op to fund exotic hunting trips for himself and his wife. Upon discovery of the fraud in 2018, the Co-Op ceased operations and appointed an Assignee, Plaintiff Erik Ahlgren, to pursue claims and remedies on behalf of the Co-Op and its

creditors.  Ahlgren brought this action in January 2019, seeking to void the unauthorized payments to Defendants.

Presently before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Because Defendants do not have sufficient minimum contacts with Minnesota to support personal jurisdiction, the Court will grant Defendants' motion without prejudice under Fed. R. Civ. P. 12(b)(2) and deny Ahlgren leave to amend.

## BACKGROUND

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota.  (Notice of Removal ¶ 1, Ex. A ("Compl.") ¶¶ 1, Feb. 8, 2019, Docket No. 1.)  The Co-Op purchases grain from local farmers, who are also owners of Co-Op, and sells it to grain markets. (Compl. ¶ 14.)

In 1989, the Co-Op hired Jerry Hennessey, a resident of Minnesota, as its general manager.  (*Id.* ¶ 15.)  Between June 2003 and September 2018, Hennessey received over $5.4 million in unauthorized funds from the Co-Op by writing checks from the Co-Op to himself and directly to third parties, including Defendants.  (*Id.* ¶¶ 16–18, 26.)  Hennessey used the checks for personal bills, home improvement projects, property purchases, and domestic and international hunting trips unrelated to the business of the Co-Op.  (*Id.* ¶ 17.) Hennessey disguised his fraud from the Co-Op by coding the checks as feed purchases or other ordinary expenses.  (*Id.*)  All the checks at issue identified the Co-Op as the payor. (*Id.* ¶ 19.)

The Bilkeys are a married couple domiciled in New Zealand. (Decl. of Chris Bilkey ("1st C. Bilkey Decl.") ¶¶ 2, 4, Feb. 28, 2019, Docket No. 13.) The Bilkeys have never owned property, done business, or maintained a bank account in Minnesota. (*Id.* ¶ 3; Decl. of Peg Bilkey ¶ 3, Feb. 28, 2019, Docket No. 12.) The Bilkeys "are the founders and sole partners" of Track and Trail Safaris ("T&T"), a New Zealand partnership. (1st C. Bilkey Decl. ¶ 4.) T&T provides clients with guided hunting trips in New Zealand and Australia. (*Id.* ¶¶ 6–8.) T&T is not licensed to do business in Minnesota, does not have property or agents in Minnesota, and does not maintain a bank account in Minnesota. (*Id.* ¶ 5.)

The Bilkeys first met Hennessey in early 2011 at the Safari Club International ("SCI") convention in Nevada. (Aff. of Jerome Hennessey ("Hennessey Aff.") ¶ 8, Sept. 13, 2019, Docket No. 53.) According to Hennessey, while at the 2011 convention he and Chris Bilkey discussed booking a hunting trip in New Zealand later that year with T&T. (*Id.*) Hennessey also made a down payment using personal funds (as opposed to Co-Op funds) and signed a contract for the trip while in Nevada. (*Id.* ¶¶ 3, 8.) The contract contained a forum-selection clause stating that any disputes regarding the contract would be adjudicated by New Zealand courts under New Zealand law. (Decl. of Chris Bilkey ("2nd C. Bilkey Decl.") ¶ 4, Ex. A, Sept. 9, 2019, Docket No. 44.) After the 2011 SCI convention Hennessey returned to Minnesota and corresponded with the Bilkeys via email to finalize details for the trip. (Hennessey Aff. ¶ 10.) Hennessey was responsible for making his own travel arrangements for the trip. (*Id.* ¶ 11.) Before finalizing the trip, Hennessey stated he visited T&T's website and viewed information to insure he would enjoy the hunt. (*Id.*)

Between 2014 and 2018, Hennessey went on three more hunting trips with T&T in New Zealand and Australia. (*Id.* ¶ 7.) These three trips are the subject of this litigation. Hennessey paid for these three trips with seven unauthorized Co-Op checks payable to Chris Bilkey totaling $152,500. (*Id.* ¶¶ 3, 13.) The contacts between Hennessey and the Bilkeys were generally the same for the three illicit trips as they were for the 2011 trip: Hennessey met with the Bilkeys at the SCI convention in Nevada in January or February each year; Hennessey made down payments and signed similar contracts for the hunts each year in Nevada; and, after returning to Minnesota, Hennessey corresponded with the Bilkeys via email to finalize trip details. (*Id.* ¶¶ 9–12.)

Hennessey's fraud was discovered in September 2018. (Compl. ¶ 26.) By this time, Hennessey had obtained a credit line of over $7 million for the Co-Op in his ongoing efforts to conceal his fraud and cover the Co-Op's expenses. (Decl. of Erik A. Ahlgren ("Ahlgren Decl.") ¶ 4, Ex. C at 26–27, Aug. 26, 2019, Docket No. 41.)[1] On February 14, 2019, Hennessey pleaded guilty to mail fraud and income tax evasion. (*Id.* at 37.)

As a result of Hennessey's fraud, the Co-Op was forced to close and has been unable to pay its debts. (Ahlgren Decl. ¶ 3, Ex. B at 15.) In December 2018, the Co-Op executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-Op's creditors. (*Id.* at 15–23.) Pursuant to Minnesota Statutes, chapters 576 and 577, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any

---

[1] The page numbers referred to in the exhibits of the Ahlgren Declaration refer to the page numbers of Docket No. 41 as opposed to any page number that may be listed in the original document of any exhibit.

claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op.  (Compl. ¶¶ 5–8.)  According to reports filed with the Assignment, the Co-Op has 43 creditors, most of which are based in Minnesota.  (Ahlgren Decl. ¶ 3, Ex. B at 22–23.)

## III.    PROCEDURAL BACKGROUND

Ahlgren originally brought this action in Grant County District Court on January 8, 2019, alleging three Counts against Defendants: (I) actual fraud pursuant to Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment.  (Compl. ¶¶ 28–50.)  Defendants removed the case to this Court on February 8, 2019.  (Notice of Removal at 7.)  On February 28, 2019, Defendants moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).  (Mot. to Dismiss, Feb. 28, 2019, Docket No. 9.)  The Court denied the motion to dismiss without prejudice due to a delay in a related case, *Ahlgren v. Muller*, noting the Court assumed T&T and the Bilkeys would refile their motion and the Court would hear it together with a similar motion in *Muller*. (Order, June 21, 2019, Docket No. 34.).  Defendants renewed their Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) and it is presently before the Court.  (Mot. to Dismiss, August 5, 2019, Docket No. 36.)

## DISCUSSION

## I.    PERSONAL JURISDICTION

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction.  "To defeat a motion to dismiss for lack of personal

jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647. For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the nonmoving party. *Westley v. Mann*, 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

**B.      Due Process and Specific Personal Jurisdiction**

The Court may exercise personal jurisdiction over a defendant if doing so (1) is consistent with the Minnesota's long-arm statute, Minn. Stat. § 543.19, and (2) comports with the Due Process Clause of the Fourteenth Amendment. *Pope*, 588 F. Supp. 2d at 1014. Because Minnesota's long-arm statue extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process." *Id*. at 1015.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Although personal jurisdiction can be general or specific, this case deals only with whether Defendants have sufficient minimum contacts to support specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotations omitted).  In addition to establishing minimum contacts with the forum, for specific personal jurisdiction to be proper, the complained-of conduct must also arise out of the contacts that defendant creates with the forum state.[2]  *Id.* at 284.  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State" for jurisdiction to be proper.  *Id.* at 285.

The Eighth Circuit considers five factors in making a personal jurisdiction determination:

> (1) the nature and quality of the contacts with the forum state;

---

[2] "This is in contrast to 'general' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." *Walden*, 571 U.S. at 283 n.6.

> (2) the quantity of the contacts with the forum state;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted). "[T]he first two factors go primarily to whether minimum contacts exist," the third determines whether the action arises from the contacts, and the last two examine reasonableness. *Yellow Brick Road, LLC, v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. 2014). The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state. *See* 13 Wright & Arthur R. Miller, Federal Practice and Procedure §1069 (4th ed.).

## C. Minimum Contacts Analysis

Ahlgren acknowledges that Defendants have never visited Minnesota or conducted business in the state, but argues the Court has specific jurisdiction over Defendants' based on the following contacts: (1) Defendants' attendance at the SCI convention in Nevada targeting the entire United States, including Minnesota; (2) the contracts, emails, and acceptance of Co-Op checks; (3) Defendants' online presence; and (4) the totality of Defendants' contacts. Ahlgren also requests leave to amend if the Court finds jurisdiction lacking. Each argument is considered in turn below.

### 1. SCI Convention

Ahlgren first argues defendants purposefully availed themselves of Minnesota by attending SCI conventions in Nevada that target the entire United States for business. As Ahlgren puts it, "the Defendants came to the [SCI] show looking for big fish from the United States and they shouldn't now complain that it was unexpected that they would catch a big fish from Minnesota." (Pl.'s Mem. Opp'n. at 17.) While logical to some extent, "a purely national advertising campaign that does not target Minnesota specifically cannot support a finding of personal jurisdiction." *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 334 (Minn. 2016); *see also Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir. 1988) ("The sole contact between Lake Havasu, this lawsuit, and Minnesota is Lake Havasu's advertising of its product in a nationally distributed trade publication which is circulated in Minnesota. It does not appear . . . that Lake Havasu's advertising represents a purposeful availment of the benefits and protections of Minnesota law.").

Accordingly, the Court cannot properly exercise jurisdiction based on Defendants' attendance at the SCI convention in Nevada that targets the entire United States.

### 2. Contract, Emails, and Checks

Ahlgren also argues that personal jurisdiction is proper because Defendants created "continuing relationships and obligations" with Hennessey by contracting with him, sending emails to Hennessey in Minnesota, and by accepting checks from the Co-Op. *Burger King*, 471 U.S. at 473.

"But a contract with a citizen of a State alone is insufficient to establish minimum contacts with that forum." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (citing *Burger King*, 471 U.S. at 478). "To determine whether a

defendant purposefully established minimum contacts with the forum, we must evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*

Defendants' and Hennessey are alleged to have executed three separate contracts to go on three separate hunting trips from 2014–2018.[3] The contracts were negotiated (if at all) and signed while both parties were in Nevada, not Minnesota. The forum-selection clause included in the contracts show the parties contemplated resolving disputes about the contracts in New Zealand, not Minnesota.

The parties' course of dealing, however, shows that Defendants sent emails to Hennessey in Minnesota to finalize details regarding the excursions and accepted checks from the Co-Op. Although these contacts can be relevant to finding jurisdiction when considered alongside other, more direct contacts with the forum State, they are insufficient on their own to show purposeful availment. *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (noting "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process"); *see also Ahlgren v. Link*, No. 19-305 (JRT/LIB), 2019 WL 3574598, at *4 (D. Minn. Aug. 6, 2019) (noting emails, phone calls, and invoices defendant sent into Minnesota were relevant in finding specific jurisdiction when considered alongside Defendant's visits to Minnesota to promote his business).

---

[3] Although a copy of the forum-selection clause included in the contracts was produced, the actual contracts at issue were not, limiting the ability of the Court to examine the terms of the contract. Even so, the parties agree contracts were executed.

Accordingly, Ahlgren has not established Defendants have sufficient minimum contacts with Minnesota for the Court to exercise jurisdiction under a contract theory of personal jurisdiction.

### 3. Internet Contacts

Ahlgren also argues Defendants' website confers jurisdiction. Ahlgren makes similar arguments for the website contacts as he does for the alleged SCI convention contacts; because the website targets the entire world, it also targets Minnesota.

The Eighth Circuit finds the *Zippo* test instructive "when considering the sufficiency of internet contacts under a specific jurisdiction analysis." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). Under the *Zippo* test, the Court applies a sliding scale based on the "nature and quality of commercial activity" that can be conducted via the website to determine the likelihood of specific jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). On one end of the scale are "interactive" websites which allow for contract formation directly from the website. *Id.* Interactive websites are highly likely to confer jurisdiction. *See Johnson*, 614 F.3d at 796. On the other end of the scale are "passive" websites, which merely make information accessible to users. *Zippo*, 952 F. Supp. at 1124. Passive websites do not confer jurisdiction. *Id.*

The Court finds T&T's website is passive because it only makes information available to view and does not allow for direct sales (*i.e.* contract formation). Accordingly, "[t]he website's accessibility in [Minnesota] alone is insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 796.

### 4. Totality of Contacts and Motion to Amend

Finally, Ahlgren appears to argue that the totality of the contacts show Defendants ought to have anticipated being haled into a Minnesota court. Ahlgren points to *Aftanase v. Economy Baler Co.* to argue Defendants engaged in "voluntary, affirmative economic activity of substance" in Minnesota which confers jurisdiction. 343 F.2d 187, 197 (8th Cir. 1965). The Court disagrees. Defendants contacts, when considered in totality, fall well short of the "voluntary, affirmative economic activity of substance" contemplated in *Aftanase*. There, a foreign farm-equipment company shipped balers directly to residents of Minnesota, sold replacement parts in Minnesota, and sent brochures advertising its products into the State. *Id.* Here, as noted, Defendants never shipped products to Minnesota, never sold their services within Minnesota, and never advertised directly in the State. *Aftanase* provides no help to Ahlgren.

In sum, the only link between Defendants and Minnesota appears to be Hennessey. This is insufficient to establish minimum contacts that comport with due process. *Cf. Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum"). And because the parties have already engaged in jurisdictional discovery and Ahlgren does not present any proposed amendment that could cure the jurisdictional flaw, granting Ahlgren leave to amend the pleading would be futile. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065–66 (8th Cir. 2005). The Court will therefore grant Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) and need not consider whether Ahlgren has failed to state a claim under Rule 12(b)(6).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 36] is **GRANTED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 3, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge